# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| ELIZABETH MARIE KIERAS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 2:19-cv-01927-SGC ) |
| ANDREW SAUL, Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION[1]

Plaintiff Elizabeth Marie Kieras appeals from the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her Disability Insurance Benefits ("DIB"). (Doc. 1).[2] Kieras timely pursued and exhausted her administrative remedies, and the Commissioner's decision is ripe for review. For the following reasons, the Commissioner's decision is due to be reversed and remanded.

**I. Procedural History**

Kieras was thirty-six years old at her alleged onset date and a few weeks shy of her fortieth birthday at the time of the decision. (R. 25, 34, 83). She completed

---

[1] The parties have consented to magistrate judge jurisdiction under 28 U.S.C. § 636(c). (Doc. 9).

[2] References to the record in this case refer to the document and page numbers assigned by the court's CM/ECF document system, and appear in the following format: "(Doc. _ at _)." References to "R. _" refer to the administrative record. (*See* Docs. 7-1 through 7-9).

high school and more than four years of college. (R. 184). Her past work experience has primarily been in the financial services arena, including positions as director of finance, financial advisor, office manager, small business manager, and registered sales assistant at a brokerage firm. (R. 58-59, 184). Kieras contends she is unable to work due to narcolepsy, hypersomnia, excessive daytime sleepiness, obstructive sleep apnea, and chronic fatigue syndrome. (R. 183). Although she sleeps between ten and twelve hours each night, Kieras testified she never feels rested and without her medication she would sleep for forty-eight hours at a time. (R. 49). However, according to Kieras, her tolerance to the medication has made it less effective, and she can no longer function. (R. 50-51). She testified she can only be active for a period of four and a half hours and she experiences a brain fog that inhibits her functioning while awake. (R. 51, 56).

Kieras protectively filed her application for a period of disability and DIB on September 13, 2016, alleging disability beginning May 8, 2015. (R. 25, 145). When the Social Security Administration ("SSA") denied her claims initially, Kieras requested a hearing before an Administrative Law Judge ("ALJ"). (R. 64-72, 83-84). A hearing was held on September 11, 2018, in Birmingham, Alabama. (R. 40-63). Following the hearing, the ALJ denied her claim. (R. 25-34). Kieras appealed the decision to the Appeals Council ("AC"), and after reviewing the record, the AC declined to further review the ALJ's decision. (R. 1-8). That decision became the

final decision of the Commissioner and is now ripe for review. *See Frye v. Massanari*, 209 F. Supp. 2d 1246, 1251 (N.D. Ala. 2001) (citing *Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998)).

## II. Statutory and Regulatory Framework

To establish her eligibility for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a). The Social Security Administration employs a five-step sequential analysis to determine an individual's eligibility for disability benefits. 20 C.F.R. § 416.920(b).

First, the Commissioner must determine whether the claimant is engaged in "substantial gainful activity." *Id* "Under the first step, the claimant has the burden to show that she is not currently engaged in substantial gainful activity." *Reynolds-Buckley v. Comm'r of Soc. Sec.*, 457 F. App'x 862, 863 (11th Cir. 2012).[3] If the claimant is engaged in substantial gainful activity, the Commissioner will determine the claimant is not disabled. At the first step, the ALJ determined Kieras has not

---

[3] Unpublished opinions of the Eleventh Circuit Court of Appeals are not considered binding precedent; however, they may be cited as persuasive authority. 11th Cir. R. 36-2.

3

engaged in substantial gainful activity since May 8, 2015, her alleged onset date. (R. 27).

If a claimant is not engaged in substantial gainful activity, the Commissioner must next determine whether the claimant suffers from a severe physical or mental impairment or combination of impairments that has lasted or is expected to last for a continuous period of at least twelve months. 20 C.F.R. § 416.920 (a)(4)(ii) & (c). An impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." *See id.* at § 416.921. Furthermore, it "must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms." *Id.*; *see also* 42 U.S.C. § 423(d)(3). An impairment is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities . . . ." 20 C.F.R. § 416.922(c).[4] "[A]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to

---

[4] Basic work activities include:

> (1) [p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) [c]apacities for seeking, hearing, and speaking; (3) [u]nderstanding, carrying out, and remembering simple instructions; (4) [u]se of judgment; (5) [r]esponding appropriately to supervision, co-workers and usual work situations; and (6) [d]ealing with changes in a routine work setting.

20 C.F.R. § 416.922(b).

4

interfere with the individual's ability to work, irrespective of age, education, or work experience." *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984); *see also* 20 C.F.R. § 404.1521(a).  A claimant may be found disabled based on a combination of impairments, even though none of her individual impairments alone is disabling. 20 C.F.R. § 416.920  The claimant bears the burden of providing medical evidence demonstrating an impairment and its severity.  *Id.* at § 416.912(a).  If the claimant does not have a severe impairment or combination of impairments, the Commissioner will determine the claimant is not disabled.  *Id.* at § 416.920(a)(4)(ii) and (c).  At the second step, the ALJ determined Kieras has the following severe impairments: hypersomnia; chronic fatigue syndrome; hypothyroidism; and sleep-related breathing disorder.[5]  (R. 27).

If the claimant has a severe impairment or combination of impairments, the Commissioner must then determine whether the impairment meets or equals one of the "Listings" found in 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. § 416.920(a)(4)(iii) & (d). The claimant bears the burden of proving her impairment meets or equals one of the Listings.  *Reynolds-Buckley*, 457 F. App'x at 863.  If the claimant's impairment meets or equals one of the Listings, the Commissioner will determine the claimant is disabled.  20 C.F.R § 416.920(a)(4)(iii) and (d).  At the

---

[5] The ALJ also determined Kieras has the following non-severe impairments: essential hypertension; gastroesophageal reflux disease; iron deficiency anemia; history of thyroid cancer; and depression. (R. 28).  Kieras does not challenge these findings. (Doc. 13).

third step, the ALJ determined Kieras did not have an impairment or combination of impairments that meet or medically equal the severity of one of the Listings. (R. 30).

If the claimant's impairment does not meet or equal one of the Listings, the Commissioner must determine the claimant's residual functional capacity ("RFC") before proceeding to the fourth step. 20 C.F.R. § 416.920(e). A claimant's RFC is the most she can do despite her impairment. *See id.* at § 416.945(a). At the fourth step, the Commissioner will compare the assessment of the claimant's RFC with the physical and mental demands of the claimant's past relevant work. *Id.* at § 416.945(a)(4)(iv). "Past relevant work is work that [the claimant] [has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." *Id.* § 416.960(b)(1). The claimant bears the burden of proving that her impairment prevents her from performing her past relevant work. *Reynolds-Buckley*, 457 F. App'x at 863. If the claimant is capable of performing her past relevant work, the Commissioner will determine the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(iv) & (f).

Before proceeding to the fourth step, the ALJ determined Kieras has the RFC to perform a limited range of light work. (R. at 30). More specifically, the ALJ found Kieras had the following limitations with regard to light work, as defined in 20 C.F.R. § 404.1567(b):

> [Kieras can] never climb ladders, ropes, and scaffolds; never be exposed to workplace hazards such as moving mechanical parts and high exposed places; and cannot perform production rate work.

(*Id.*). At the fourth step, with the aid of testimony from the vocational expert ("VE"), the ALJ determined Kieras was able to perform her past relevant work. (R. 33). Therefore, the ALJ concluded Kieras had not been under a disability as defined by the SSA from May 8, 2015, through the date of decision. (R. 33).

## III. Standard of Review

Review of the Commissioner's decision is limited to a determination whether that decision is supported by substantial evidence and whether the Commissioner applied correct legal standards. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). A district court must review the Commissioner's findings of fact with deference and may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007); *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Rather, a district court must "scrutinize the record as a whole to determine whether the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (internal citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.* A district court must uphold factual

findings supported by substantial evidence, even if the preponderance of the evidence is against those findings. *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

A district court reviews the Commissioner's legal conclusions *de novo*. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

**IV. Discussion**

Kieras makes three arguments in favor of remand. She first argues the ALJ gave improper weight to the opinions of her treating physicians. (Doc. 13 at 8-19). She next contends the ALJ improperly applied the pain standard in rejecting her subjective complaints regarding her limitations. (Doc. 13 at 19-25). Finally, she asserts the Appeals Council erred in its failure to consider her newly submitted evidence. (Doc. 13 at 25-28). The court addresses only the first argument because it warrants reversal and remand.

In determining the weight to give a physician's opinion, the ALJ should consider the relationship between the physician and the claimant (treating and examining physicians being given more weight); the extent to which medical evidence supports the opinion; the opinion's consistency with the record as a whole;

the physician's specialization; and other relevant factors. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c) (2012). A treating physician's opinion "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *see also Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). The Eleventh Circuit has stated that "'good cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004). In rejecting a medical opinion, the ALJ must clearly articulate his or her reasons for doing so.

The medical opinions at issue are five treating source statements. Four of the five statements are on the same form which, as relevant here, asks the following three questions:

> (1) Based on your most recent examination of the patient, has his/her condition improved or stabilized to the ability to return to work in any capacity?
>
>> a. Yes, no restrictions . . .
>> b. Yes, with restrictions (see #2) . . .
>> c. No RTW at this time (see #2)  Work capability anticipated:
>
> (2) If patient does not have capability for full duty return to work, please detail below what are the specific restrictions or limitations impacting or precluding return to work, including duration of expected restrictions.

> (3)  If restrictions and limitations are noted above, please indicate the objective medical reasoning for these restrictions at this time.

(R. 174-78).  The first statement is dated July 23, 2015, and is signed by a nurse practitioner, but the signature is illegible.  (R. 174).  It states Kieras cannot work and any return to work is unknown.  (R. 174).  As far as restrictions, the statement opines "patient is unable to maintain wakefulness for even short amounts of time. . . . Plan of care to be determined."  (R. 174).  The medical reasons listed are "uncontrolled daytime sleepiness, cataplexy and sleep attacks."  (R. 174).

The second statement is from a nurse in Dr. David B. Rye's office at the Emory Sleep Clinic and is dated April 5, 2017.  (R. 176).  It documents that Kiera could not return to work, with unknown work capability.  (R. 176).  The restrictions list "no[t] driving when sleepy" and "patient unable to complete normal tasks due to hypersomnia and cognitive decline."  (R. 176).  The objective medical reasoning for the restrictions are a 2007 MSLT test showing multiple sleep latency of 5.2 minutes over four nap opportunities with no sleep-onset REM periods, a 2004 sleep study showing mild obstructive sleep apnea treated with a CPAP, and a 2005 Actigraphy showing excessive sleep.  (R. 176).

The third  statement is from Dr. Robert Doekel, a specialist at the Sleep Disorders Clinic of Alabama, dated November 7, 2017.  (R. 177).  Dr. Doekel concludes Kieras could not return to work with an unknown work capability.  (R.

177). The restrictions listed are "excessive daytime sleepiness, extreme fatigue, unable to drive, only leaves home to go to doctors appointments." (R. 177). Dr. Doekel points to the following objective medical evidence supporting these restrictions: "narcolepsy with cataplexy and obstructive sleep apnea with minimal response to treatment." (R. 177).

Finally, in a statement dated December 20, 2017, Dr. Rye opines Kieras was "not ready" to return to work but that her work capability would be "within 2 years." (R. 178). As far as restrictions, Dr. Rye lists "no driving—no excessive physical activities." (R. 178). He cites severe idiopathic hypersomnia and chronic fatigue as the medical evidence supporting his restrictions. (R. 178).

The fifth statement is on a different form from the four detailed above. The statement is from Dr. Williams G. Adams and is dated June 29, 2015. (R. 172-73). After listing Kieras's diagnoses, Dr. Williams checks "yes" to the following three questions: "Did you advise the patient to a) reduce work hours? b) cease work? c) work light duty?" as of June 23, 2015. (R. 173). He notes her restrictions as "driving longer than 30 minutes or at night for now." (R. 173). As far as duration of restrictions, Dr. Williams states that because "[n]arcolepsy is a lifelong disorder . . . until her treatment is stable, the patient was advised not to work as she posed safety risks." (R. 173). He opines her impairment was moderate in occupational functioning because her "symptoms are unstable now and can happen without

warning." (R. 173). Finally, Dr. Williams checks "no" in response to the query, "In your opinion, does the patient have some capacity for work." (R. 173).

The ALJ gave partial weight to the functional statements from Keiras's treating physicians. (R. 32). Specifically, the ALJ found the statements "lack, in detail, and the extreme limitations noted ('no driving,' 'unable to complete normal tasks,' etc.) are not commensurate with the treatment from the providers, or the claimant's actual activity level gathered from other evidence in the claim." (R. 32).

On this record, the court cannot conclude the ALJ fully developed his analysis and assignment of partial weight with respect to the statements of Kieras's treating physicians. The stated reasons for discounting their opinions are conclusory and contain no substantive explanation of the ALJ's reasoning. Notably, the ALJ did not examine or discuss the vast majority of treating doctors' treatment notes other than to discount them.[6] And the minimal discussion of the medical evidence is overly generalized and does not reflect a full and fair overview of the medical evidence.[7] (R. 27-28). Such limited discussion prevents the court from performing the required substantial evidence determination.

---

[6] While the court agrees with the Commissioner that the ALJ is not required to discuss every doctor's opinion in the record, at least some discussion is required for a meaningful review by the court.

[7] In fact, as pointed out by Kieras, the ALJ incorrectly states that "no treating, examining, or reviewing doctor has indicated that the claimant was disabled or otherwise unable to perform work-related activities." (R. 31). Instead, all five medical source statements opine Kieras is unable to work.

Moreover, while the ALJ may consider Kieras's daily activities in assessing the medical opinions, the ALJ does not explain what "other evidence" of her activity level contradicts the doctors' opinions. Instead, the ALJ's description of her daily activities over-simplifies the evidence in the record. (R. 32). For instance, one reason the ALJ appears to discount the doctors' opinions is because they opine Kieras should not drive but the ALJ states "[s]he drives." (R. 32). However, a review of the evidence shows that although Kieras can drive, she rarely does—only if it is an emergency or if she cannot reschedule a doctor's appointment when her husband is out of town—and there is certainly no evidence of routine driving by Kieras as insinuated by the ALJ's opinion. (R. 46, 201).

In sum, the court cannot conclude substantial evidence supports the decision of the ALJ regarding the opinions of Kieras's treating physicians because there is simply not enough discussion of the medical opinions or the ALJ's reasoning for discounting the opinions. On remand, the ALJ should clarify and explain his analysis of each of the doctor's opinions. The court does not make any findings as to Kieras's other arguments.

## V. Conclusion

For the reasons set forth above, the court concludes that the ALJ's determination Kieras is not disabled is not supported by substantial evidence. The decision of the Commissioner is due to be reversed and remanded for further

proceedings, including for further examination, assessment, and evaluation the medical opinions. An appropriate order will be entered separately.

**DONE** this 15th day of March, 2021.

										_____
										STACI G. CORNELIUS
										U.S. MAGISTRATE JUDGE